**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RUSSELL DWAYNE DYKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-cv-400-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Russell Dwayne Dykes, pursuant to 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying his application for disability benefits under Title XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 9). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

**Review**

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 416.908. The evidence must

come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 416.913(a).

## Background

Plaintiff was born April 20, 1955 and was 53 years old at the time of the Administrative Law Judge's ("ALJ") final decision on May 9, 2008.[1] (R. 57). Plaintiff has a high school education and received subsequent commercial electricity training at Central Vocational Tech. (R. 58). He was honorably discharged from the Air Force in 1974 and last worked December, 2002. (R. 59). Plaintiff's prior work history consists of mostly self-employment. (R. 61). Plaintiff alleges a disability onset date of April 22, 2004; however, supplemental security benefits can only be paid beginning the month following the month in which the application was filed. Therefore, the ALJ, while considering the entire record, set August 16, 2005, the application date, as plaintiff's onset date. 20 C.F.R. § 416.335. (R. 44, 145).

During the hearing held April 8, 2008, plaintiff's counsel argued plaintiff's condition "may" meet the listing 9.08, diabetes mellitus, specifically because of plaintiff's peripheral neuropathy in both feet. Plaintiff's counsel also mentioned blood work results showing plaintiff may also suffer from diabetic acidosis. (R. 56-57).

Plaintiff testified that he stopped working in 2002 because he went to prison for a year and that he did not return to work after his release due to treatment for hepatitis C and neck surgery. He also stated he did not feel he was physically able to work. (R. 59-60).

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 92, 93, 94-97, 99-101). A hearing was held before ALJ Charles Headrick April 8, 2008 (R. 53-83), in Tulsa, Oklahoma. By decision dated May 9, 2008, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 39-49). On April 20, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

Plaintiff testified that he developed problems of extreme pain in his neck, with numbness in his hands and fingers, prior to having neck surgery. (R. 62-63). He stated he is still in pain after surgery, with numbness in his ring and little fingers on both hands, which affects his grip, making him prone to drop things at least "four or five times a week." (R. 63). Plaintiff stated he is unable to handle small objects, or lift anything weighing more than ten (10) pounds without cramping in his hands. (R. 64). He claimed to experience "extreme cramps" that cause his hands to "draw up" if he exerts too much pressure lifting something, or even yawning could cause the cramps. Id.

Plaintiff discussed problems with his legs, stating they were "just like drags," and explained he broke his back in 1990, after which his left leg became weak and numb and "just give[s] out" with no warning, "like it's not there anymore," (R. 65), causing him to fall. (R. 67). He claimed to be able to walk only a couple of blocks before he became tired and his legs felt "rubbery," and stand only a couple of minutes without support. (R. 66). He did state he felt he could stand about five minutes if supported before needing to sit due to pain in his feet and back spasms. (R. 66-67). He complained of numbness in his feet and toes, stating he is unable to expose them to the cold. (R. 68).

Plaintiff stated he had been diagnosed with diabetes, which he used four (4) daily shots of injectable insulin to control. (R. 69). In describing the effects of high blood sugars, plaintiff stated "the real high ones [around 700] you're talking to dead people sometimes. You're hallucinating." (R. 70). He also stated he becomes confused, upset or angry easily, and that he has memory problems when his blood sugar rises to around 400 to 500. (R. 71).

He stated he has problems with fatigue, making him nap two to three times a day. (R. 73). He claimed to have trouble sleeping at night, stating he wakes to use the restroom up to seven times a night. Id. He reported excessive thirst and urination, problems with his vision, and headaches (which a doctor believed were caused by hypertension). (R. 73-75).

Plaintiff stated his son does most of the housework and cares for the yard. He claimed he was unable to pursue his previous hobbies, that he is unable to squat or crouch, and that he is not able to climb stairs or ladders. (R. 76). He discussed difficulty sitting for any length of time, cramping with pain in his legs, and sensitivity to heat. Id.

In his Disability Report – Adult, plaintiff stated the "illnesses, injuries or conditions" that limited his ability to work included hepatitis C, diabetes II, "right hand middle finger has torn ligament," breathing problems and post-surgery neck problems. (R. 190). He claimed to have trouble getting out of bed "due to the Hep C and the Joint Pain – some days I stay in bed 16-18 hours per day." He said he had "constant" pain and numbness in both hands and arms, that he dropped things and had numbness in his left leg. He said he broke his back in 1990 and had numbness and weakness in his right hand since 1999-2000. He said the hepatitis C began in 2002 and he had surgery for the "removal of disks in 04/2004." Id. He stated he stopped working March 1, 1999 due to "dropping things" and "constant pain." Id. On the same form, he stated he was not taking any medications at all. (R. 195).

On a Disability Report – Appeal form, plaintiff claimed his glucose levels were uncontrollable, he suffered vision deterioration, the neuropathy in his hands and feet had worsened, and he suffered "leg and hand spasms and cramps caused by neck and back injuries." (R. 202). He listed metformin, 500 mg as medication he was prescribed for the type II diabetes,

stating the side effects to be diarrhea and fatigue. (R. 204). Plaintiff claimed he was unable to perform his activities of daily living (ADLs) consistently due to spasms and neuropathy in his hands, legs and feet as well as vision problems. (R. 205).

In the narrative portions of his Function Report – Adult, plaintiff mentioned his son helps him more than he helps his son, that he has trouble caring for his personal needs due to his health problems, that his sister helps him with tasks such as laundry, his son does the housework, and his brother-in-law handles the yard work. (R. 208-218). He stated he does not drive because he cannot afford insurance, that he ventures outside a few times a month, shops for food a couple of times a month, and that he visits with his parents and sister at least once a week by telephone. (R. 212). He claimed to be unable to "do 1/10th of what [he] used to do," claimed he can only walk a block before needing to rest for five to ten minutes, and that his vision was too poor to enable him to follow written instructions. (R. 213). He also claimed his hearing is poor in answer to the question how well he could follow spoken instructions. Id.

He detailed increasing problems with his temper, and stated the main charge which sent him to prison was assault and battery of a police officer. (R. 214). Under the "remarks" section, plaintiff wrote extensively, stating that he "paid some kind of tax on everything [he had] bought or sold or purchased or earned since [he] was old enough to get an allowance or money for [his] birthday. [He had] worked at some kind of job since [he] was nine (9) years old. It may not have been written down and reported but every dime was spent right here in the USA." (R. 215). He stated that five of seven days he felt like he had the flu, that he worked through many injuries during the years, but that "all of these injuries and the Hepatitis and Diabetes combined together have gotten me to the point of weather (sic) or not it's worth it." (R. 216).

Plaintiff claimed he was diagnosed with hepatitis C while awaiting sentencing in the Creek County jail, stating he obtained medication through his wife's health insurance, but was not allowed to take the medication while incarcerated. (R. 217). Once released a year later, he began treatment with Interferon and Rebatol, which lowered his immune system. Although he was undergoing frequent blood tests, he developed a staph infection in his neck that required surgery to remove two vertebrae in his neck and install a titanium plate. Id. He stated he remained on intravenous antibiotics for twelve weeks after surgery, during which time he was also diagnosed with diabetes. Id. He said his blood sugar readings run between 300 and 500, basically out of control. Plaintiff did attest to having "a good day" once in a while wherein he was able to "move around pretty good." Id.

There is an undated medication form which lists plaintiff to be taking the following:

| | | | |
|---|---|---|---|
| Novulin Reg. Insulin | up to 15 mg, 3 times a day | diabetes | Dr. Jason Remington |
| Levemir Insulin | 28 mg, 1 time a day | diabetes | Dr. Jason Remington |
| Lisinopril | 10 mg 1 ½ daily | High blood pressure | Dr. Jason Remington |
| Antibuterol Inhaler | 2 puffs as needed | | Dr. Jason Remington |
| Meperidine | 50 mg, every 6 hrs as needed for pain | | Dr. Jason Remington |
| Bactrin DS | 300-160 tab | Kidney stones | Dr. Jason Remington |
| Keflex | 500 mg caps, 4 times a day | Infection from sabatiscssist [sic] on neck | Dr. Jason Remington |

(R. 228). Also listed are two over-the-counter medicines, one for heartburn and one for congestion. Also listed is "Valasic [sic] Dill pickle juice (about 1 gal a month as needed for severe leg, arm, hand and feet cramps.)" Id.

Plaintiff submitted a written note, discussing his visit to Dr. Remington on March 31, 2008. He discussed his blood pressure and diabetes, complete with a chart of his morning, noon, evening, and bedtime blood sugar level readings, only one of which was below 200. (R. 232-238).

Plaintiff's medical records begin with a transcript from a Worker's Compensation hearing dated November 17, 1988, which details a fall plaintiff suffered while employed by Roger Johns as a painter. (R. 155-173). In the fall, he injured his left ankle, receiving a 23% impairment rating to the ankle. (R. 168).

Next is another transcript from an additional Worker's Compensation hearing dated May 15, 1991, which details another fall plaintiff suffered while employed by Service Personnel as a contractor. (R. 311-327). He was patching firewall inside a building and again fell off a ladder approximately 12 to 14 feet, injuring his leg, ribs and back. Plaintiff was diagnosed "Spondylolisthesis L5-S1, grade 1, possibly acute." (R. 326). He received a "27% permanent partial impairment" rating to his "body as a whole." (R. 315).

Records from Lindsey Barnes, D.O., dated January 6, 1992 to August 5, 2002 show various treatment for bronchitis, colds, rashes and insect bites, notes of a metal foreign body in his eye that had to be removed by a specialist, injury to his hand by a horse, and follow up for problems from his fall in 1990. (R. 328-342). These records note a telephone call from plaintiff's wife asking for pain medication to be called in for plaintiff while he was under arrest.

Plaintiff's wife explained that plaintiff had been diagnosed with hepatitis C and was still complaining of pain. (R. 328).

Next are records from Tulsa NeuroSpine, dated April 21, 2004 to August 5, 2004. (R. 239-265). These records begin with an examination of plaintiff's complaint of posterior neck pain. Plaintiff was diagnosed with hepatitis C and C7-T1 diskitis with bone marrow edema and epidural abscess probable per MRI result. (R. 263). The MRI of plaintiff's cervical spine showed "C7-T1 diskitis with bone marrow edema and epidural abscess. There is no evidence of cord compression or cord edema at this time. Spondylosis at C6-7 with probable right paracentral disk herniation. Spondylosis at C5-6." (R. 265). Plaintiff was examined by James A. Rodgers, M.D., who unsuccessfully attempted to aspirate the cord, and recommended surgery. (R. 248). Specimens were collected of spinal fluid. (R. 246-247). These specimens were found to be positive for staphylococcus sureus. (R. 247). Plaintiff underwent surgery performed by Dr. Rodgers on April 24, 2004 to remove infected disk material, decompress the cervical cord, correct nerve roots, and insert bone screws. (R. 248).

During a postoperative follow up visit on May 7, 2004, Dr. Rodgers noted plaintiff "had complete relief of his arm symptoms and did have return of some strength in the hand intrinsics on the left which was decreased significant preoperatively." (R. 245).

On follow up June 22, 2004, Dr. Rodgers stated plaintiff continued to recover well, that he had no radicular complaints in his shoulders or arms, and that his neck range of motion was good with an occasional pinch. (R. 243). Dr. Rodgers noted plaintiff's headaches were less frequent with no noted restriction of motion in his neck beyond occasional stiffness. Plaintiff was not taking any medication related to his neck at that time. Id.

Dr. Rodgers again saw plaintiff August 5, 2004 for a final follow up visit from surgery. (R. 240-241). Dr. Rodgers noted plaintiff reported occasional pain in his neck, no problem swallowing, and mild residual numbness in D4 and D5 of both hands. Dr. Rodgers stated plaintiff's hands and arms were strong with no long-tract signs. He gave plaintiff "a few Mepergan Fortis tablets" for pain.

On June 24, 2004, plaintiff visited Springer Clinic Outpatient Diabetes Self-Management Center for education and assistance with his new diagnosis of diabetes. (R. 266-289).

Records from Diane Snyder, M.D. (R. 306-309), dated May 22, 2006, show plaintiff complained of high blood sugars. Dr. Snyder noted plaintiff had been diagnosed with diabetes mellitus for the past two years as well as hepatitis C. (R. 307).

Next, the record shows plaintiff's visits with Jason Remington, D.O. (R. 343-351, 354-356). These visits span July 3, 2007 to March 31, 2008, and consist of a total of five (5) visits. Dr. Remington first saw plaintiff July 3, 2007 to establish himself as plaintiff's primary care physician and follow up his emergency room visit for a left neck cyst. (R. 348-349). Dr. Remington noted plaintiff did not monitor his blood sugar daily, that he had a history of asthma with no rescue inhaler or nebulizer, that he had a history of skin cancer, he noted plaintiff's neck surgery "with fusion and plating in the cervical spine," and his history of hepatitis C, saying plaintiff completed antiviral treatment. (R. 348). During this visit, plaintiff denied blurred or double vision, but complained of eye itching and redness without drainage. He did report bilateral hearing loss without pain or drainage. Plaintiff reported shortness of breath in the heat and with exertion. Plaintiff reported left sided muscle weakness in his arms with numbness in his fingers and said it started when he injured his neck.

Upon examination, Dr. Remington noted a normal range of motion in plaintiff's cervical spine, and assessed him with the following: left neck abscess – improved; diabetes mellitus type II; polyarthritis; nicotine addiction; and history of asthma. (R. 349). He prescribed test strips for plaintiff to consistently check his blood sugar and directed him to keep a log for Dr. Remington to review on his next visit. During his September 14, 2007 visit, Dr. Remington noted plaintiff's blood sugar ranged from 250-550 according to the log he was instructed to keep, with the average being 350. (R. 346). Plaintiff reported chronic paresthesias in his left leg due to his back problems, and problems swallowing. He reported warts on his feet that made walking more difficult and painful, no other foot lesions were found. Id. He reported right knee pain and swelling. Plaintiff did complain of blurry vision, but denied double vision. Upon physical examination, Dr. Remington reported plaintiff had no sensation in his toes beyond the "great toe" on his right foot, and the toes of the left foot had no sensation beyond the "great toe" and second digit. (R. 347). Plaintiff's knee showed swelling and pink color, with normal range of motion. Dr. Remington assessed plaintiff's diabetes as "uncontrolled," and noted peripheral neuropathy. Id.

During plaintiff's January 7, 2008 visit with Dr. Remington, plaintiff reported headaches when his blood pressure was high, he reported taking 15 units of Levemir, and he reported blood sugar readings from 383 to 585. His 14 day average reading was 446. Plaintiff reported fatigue, weakness, and decreased energy. He also mentioned his vision was still blurry, but that it had not become worse. Plaintiff reported increased urination with "night time leakage." (R. 344). Plaintiff was assessed with hyperglycemia (high blood sugar), diabetes mellitus type II-uncontrolled, hypertension-uncontrolled, noncompliance, polyarthritis, history of asthma and

11

nicotine addiction. Dr. Remington increased plaintiff's dosage of Levemir to 20 units, increased his Lisinopril to one and a half tablets, and stressed compliance with a diabetic diet and his medication as directed. (R. 345).

Plaintiff visited an eye doctor on November 28, 2007, and was instructed to return in three months. No further notes are found in the record regarding a follow up. (R. 356).

When plaintiff was seen by Dr. Remington on March 31, 2008, he reported his blood sugar levels had slightly improved, ranging from 250 to 350, with a 14 day average of 302. He stated there was no change in the tingling and numbness in his legs. (R. 354). Dr. Remington assessed plaintiff again with diabetes mellitus type II-uncontrolled, hypertension, noncompliance, nicotine abuse, polyarthritis history and history of asthma. (R. 355). He ordered lab work, increased plaintiff's medications and instructed him to return in one month to be checked again. Id.

Plaintiff received an agency consultative examination from Subramaniam Krishnamurthi, M.D. on November 10, 2005. (R. 290-297). Dr. Krishnamurthi found most range of motion normal with the exception of his left side, which was reduced due to pain. (R. 292). Dr. Krishnamurthi's final impression was: hepatitis C, status post cervical fusion surgery, numbness and cramping of the hands, possible mild radiculopathy, status post fracture of lumbosacral vertebrae with degenerative arthritis and weakness in the left lower extremity, abnormal limping gait on the left lower extremity due to previous back injury, and diabetes mellitus. (R. 293).

Luther Woodcock, M.D., another agency physician, completed a physical residual functional capacity (RFC) form for plaintiff February 13, 2006. He assessed plaintiff with the

following RFC, assessing based on a primary diagnosis of "cervical fusion" and secondary of "hepatitis C":

> Occasionally lift and/or carry 20 pounds;
> Frequently lift and/or carry 10 pounds;
> Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;
> Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday;
> Push and/or pull (including operation of hand and/or foot controls)-unlimited, other than as shown for lift and/or carry.

(R. 298-305). Dr. Woodcock placed no environmental, postural, manipulative, visual or communicative limitations on plaintiff. (R. 300-302).

## Procedural History

Plaintiff alleges his disabling impairments are "Hep C, Diabetes II, Right Hand Middle Finger has Torn Ligament, Breathing Problems and Neck Problems – post surgery 2004." (R. 190). In assessing plaintiff's qualifications for disability, the ALJ determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since August 16, 2005, plaintiff's Title XVI application date. (R. 44). At step two, the ALJ found plaintiff to have the severe impairments of degenerative joint disease, diabetes mellitus with bilateral feet numbness, and hepatitis C. Id.

At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926). The ALJ said:

> The undersigned has carefully compared the [plaintiff's] signs, symptoms and laboratory findings with the criteria specified in all of the Listings of Impairments. The undersigned finds no evidence that the claimant has an impairment or combination of impairments that meets or medically equals any listed impairment.

<u>Id.</u>  Before moving to the fourth step, the ALJ found plaintiff had the following residual functional capacity ("RFC"):

> … the [plaintiff] has the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 6 hours out of an 8-hour workday (with normal breaks), and sit at least 6 hours out of an 8-hour workday (with normal breaks) with no other limitations.

(R. 45).  At step four, the ALJ determined that plaintiff was unable to perform any of his past relevant work.  (R. 48).  The ALJ determined transferability of job skills was not material because application of the Medical-Vocational Rules supported a finding of "not disabled," whether or not plaintiff had transferable skills.  At step five, the ALJ determined that jobs existed in significant numbers in the national economy which plaintiff could perform based on his age, education, work experience, and RFC.  <u>Id.</u>

## Issues Raised

Plaintiff's allegations of error are as follows:

1. The plaintiff's impairment meets or equals listing 9.08, Diabetes Mellits,
2. The ALJ failed to consider the combined impact of the plaintiff's impairments,
3. The ALJ's decision is not supported by substantial evidence,
4. The ALJ improperly evaluated plaintiff's pain and fatigue,
5. The ALJ erroneously held the plaintiff could perform a significant number of jobs in the national economy, and
6. The ALJ erroneously held that the plaintiff has the RFC to perform light work subject to limitations.

(Dkt. # 12 at 3, 4).

## Analysis

Plaintiff first claims the record shows his impairment meets or equals Listing 9.08. In this regard, the only reviewable argument raised by Plaintiff is that "[t]he [ALJ] did not provide any analysis of the [p]laintiff's diabetes under step 3, but merely made a general finding that the [p]laintiff's signs, symptoms and laboratory findings did not meet a listing." (Dkt. # 12 at 4).

Upon review of both Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996) and Fisher-Ross v. Barnhart, 431 F.3d 729, the Court finds this case should be remanded to the Commissioner for explanation of his decision at step three. An ALJ is required to "discuss the evidence and explain why he found that appellant was not disabled at step three." Clifton, 79 F.3d at 1009. Fisher-Ross clarified Clifton as follows:

> … we reversed a decision denying a Social Security claimant disability benefits because the administrative law judge (ALJ) 'did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three' of the mandated five-part sequential evaluation process. [Clifton] at 1008-1010. We concluded the ALJ's 'bare conclusion [was] beyond meaningful judicial review.' Id. at 1009. Relying on Clifton, the district court in this case held an ALJ's similarly terse step three analysis required reversal. The question for our consideration is whether Clifton requires reversal where the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviates *any* concern that a claimant might have been adjudged disabled at step three. We hold that Clifton requires no such result. While we encourage ALJs to render complete findings and conclusions at each step of the five-part process consistent with § 405(b)(1) of the Social Security Act (SSA), we reject a construction of Clifton that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings.

Fisher-Ross, at 729. In the instant case, unlike in Fisher-Ross, absent a reweighing of the evidence the Court cannot conclude that the ALJ provided a step four and five analysis which "alleviates any concern that [plaintiff] might have been adjudged disabled at step three." Although the Court doubts that a remand will alter the result in this case, there is evidence in the

record favorable to the plaintiff that the ALJ failed to discuss. On remand, the ALJ should discuss this evidence and fully explain his reasoning behind his finding that plaintiff did not meet a listing.

While the ALJ mentioned <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987) as a criteria for evaluating plaintiff's pain, there is little evidence in his decision he actually considered the <u>Luna</u> factors. Upon remand, the ALJ should be more specific regarding his analysis of the <u>Luna</u> factors in this case.

The Court is not remanding on any other grounds.

## **Conclusion**

The decision of the Commissioner finding plaintiff not disabled is hereby REVERSED and REMANDED as set forth herein.

SO ORDERED this 26th day of September, 2011.

_____
T. Lane Wilson
United States Magistrate Judge